◼ In the Matter of LAURENCE GAILBAND, Petitioner, v JOSEPH J. CHRISTIAN, as Chairman of the New York City Housing Authority, Respon-

dent.—Proceeding pursuant to CPLR article 78 to review a determination of the New York City Housing Authority, dated July 21, 1978 and made after a hearing, which found petitioner guilty of certain charges of misconduct and dismissed him from his position as a housing authority police officer. Petition granted to the extent that the determination is annulled, on the law, without costs or disbursements, and the matter is remitted to the respondent for a new hearing and determination in accordance herewith. The hearing shall be held before a different hearing officer. Petitioner was appointed to the New York City Housing Authority's police force on August 10, 1959. After a hearing, he was found guilty of the following four charges: "2. In violation of General Order #3 dated May 14, 1973, from about December 21, 1976 until about October 12, 1977 you engaged in secondary employment without approval from the Chief of Housing Police. 3. In violation of the same General Order #3, more particularly Paragraph 2, Section m, thereof, during the same period of time, you engaged in secondary employment while on sick report, sick leave or disability leave. 4. In violation of General Order #1, Series 1975, 'Sick Leave Procedures', at various times between January 25, 1976 and October 12, 1977, while on extended sick leave, (a) You absented yourself from your place of confinement for purposes other than those authorized by said order * * * 5. In violation of General Order #6 dated May 14, 1973, paragraph 11 and General Order #8, dated May 24, 1977 * * * (b) On or about October 12, 1977 you did not have any of your authorized weapons on you while present at 6126 Amboy Road, Staten Island." In our view, the hearing officer deprived petitioner of a fair and impartial hearing by his conduct in the following instances: (1) The hearing officer, through respondent's counsel, advised petitioner's attorney, by letter dated June 6, 1978, that he would consider any material that might be submitted on the issue of punishment. Petitioner's counsel submitted the material to the hearing officer on June 14, 1978, but the record reveals that the hearing officer's decision, containing a recommendation that petitioner be dismissed, was dated May 31, 1978. (2) At the close of respondent's case, petitioner moved to dismiss some of the charges and the hearing officer stated in response thereto that he had received the distinct impression that counsel for petitioner did not want to put his client on the stand. Specifically, the hearing officer stated: "You are playing games. You have given me the distinct impression that you do not want to put your client on the stand and give him an opportunity to tell what he did while on sick leave * * * You are in the position now to put him on the stand. There are other matters about which officer Etheridge did not testify which your client could testify to now. However, if you want a continuance, you are going to have one * * * I have evidenced a distinct impression of what I got from the testimony so far." Such remarks by the hearing officer displayed an unwarranted and improper hostility to the petitioner, which later resurfaced when the hearing officer conducted a lengthy prosecutorial type cross-examination of petitioner with respect to his activities at a gas station operated by his wife and invited the attorney for the respondent to recross on the very same issues. (3) With respect to Charge No. 4(a) (i.e., "at various times between January 25, 1976 and October 12, 1977, while on extended sick leave, [y]ou absented yourself from your place of confinement for purposes other than those authorized by [General] order [No. 1]"), petitioner requested a bill of particulars. The respondent answered as follows: "On a regular daily or weekly basis, throughout the period of the operation of the motor vehicle service and inspection station, while the employee was on sick leave." Petitioner com-

plained to the respondent in writing about the inadequacy of the bill and, at the hearing, brought his objection to the attention of the hearing officer, but to no avail. Petitioner was clearly entitled to a more specific notice as to the elements of Charge No. 4 (a). Until such time as the practice of having disciplinary hearings conducted by hearing officers selected by the administrative agency is changed, it is all the more imperative that these hearing officers be held to a high standard of propriety by not only being impartial but by giving the appearance of impartiality. Accordingly, petitioner is granted a new hearing before a different hearing officer. In any event, even if we were to confirm the findings as to guilt, we would modify the penalty of dismissal which is " ' "so disproportionate to the offense, in the light of all the circumstances, as to be shocking to one's sense of fairness".' " *(Matter of Pell v Board of Educ.,* 34 NY2d 222, 233.)* The record indicates that in January, 1976 petitioner went on "sick report" and that about April, 1976, after unsuccessfully requesting to be allowed to perform limited duty, he was placed on "extended sick" leave. At this point, the authority gave him certain ambulatory privileges, which were never rescinded, entitling him to leave his home from 12:00 noon until 6:00 in the evening. However, according to the authority, he was not permitted to engage in secondary employment without authorization and was obligated to carry his revolver at all times. With respect to petitioner's failure to obtain permission from his superiors to participate in "secondary employment", petitioner admitted that in December, 1976 (nine months after being placed on extended sick leave) he and his wife formed the M & L Service Center of which he was a vice-president but not a shareholder. It is uncontradicted that petitioner was not an employee of the service station. Rather, he visited there at irregular intervals during the course of the day to help his wife with problems that she could not handle or to occasionally pump gas and check customers' oil when the manager was too busy. At no point did petitioner get paid for this service nor did he perform heavy mechanical work. The evidence taken as a whole indicates that petitioner randomly helped his wife in her operation of a gas station without receiving pay while he was on extended sick leave. At the most, he committed a technical violation of his sick leave, which involved no venality nor caused any harm to the public or the authority. It is significant that at no time during these proceedings has any claim been advanced by the authority that petitioner's sickness was feigned or that it was a subterfuge to allow him to obtain outside employment. At the time petitioner was observed without his revolver, i.e., on October 12, 1977, he had been on extended sick leave for about 18 months and had no reasonable expectation of being recalled to active or even limited duty. His failure to have his gun on his person at that precise moment cannot be termed a major transgression of police discipline. Under these circumstances, the dismissal of petitioner, a family man with children, who was a 19-year veteran of the force and who had earned numerous department citations and letters of recommendation, was clearly shocking and out of all proportion to the offenses allegedly committed. Suozzi, J. P., Lazer and Martuscello, JJ., concur.

Cohalan, J., dissents and votes to confirm the determination and dismiss the proceeding on the merits, with the following memorandum: The authority's determination was supported by substantial evidence, and the penalty imposed is not so disproportionate to the offenses of which petitioner has been found guilty as to be shocking to one's sense of fairness (see *Matter of Pell v Board of Educ.,* 34 NY2d 222). Further, the record does not substantiate petitioner's claim that he was deprived of his right to a fair hearing.